IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TATIANA SECHEREST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:06cv0336 |
| | ) |
| LEAR SIEGLER SERVICES, INC., | ) Judge Thomas A. Wiseman, Jr. |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Tatiana Secherest filed a complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-311, alleging her former employer Defendant Lear Siegler Services, Inc. ("LSI") retaliated against her after she engaged in a protected activity. On January 16, 2007, LSI filed a Motion for Summary Judgment (Doc. No. 19), a Memorandum in Support of the Motion (Doc. No. 20) and a Statement of Undisputed Facts in Support of the Motion (Doc. No. 21). On January 22, 2007, Ms. Secherest filed a Response in Opposition to LSI's Motion for Summary Judgment (Doc. No. 23), and on January 23, 2007, filed a Response to LSI's Statement of Undisputed Facts (Doc. 25). LSI then filed a Reply to Ms. Secherest's Memorandum in Opposition (Doc. No. 26) on January 26, 2007. For the reasons set forth below, Defendant's Motion for Summary Judgment will be GRANTED.

**I.     Factual Background**

Ms. Secherest is a citizen and resident of Tennessee. Ms. Secherest is African American. LSI is a foreign corporation with offices located in Knoxville, Tennessee. On or about November 12, 2004, Ms. Secherest began working for LSI as a stock clerk in Fort Campbell, Kentucky. On or about May 10, 2005, Ms. Secherest found a racially derogatory note in her mailbox at work. According to Reggie Booker, Head of Human Resources for LSI, the note was labeled "David Letterman's Top Ten Reasons why there are no black NASCAR drivers."[1] Ms. Secherest complained about the note to Lou De Lange, a supervisory employee who

---

[1] This "Top Ten List" is not an actual "Top Ten List" from *The Late Show with David Letterman*. It appears to be a list created by someone not affiliated with the late night show.

was not Secherest's direct supervisor. De Lange then reported the incident to the site supervisor, Steve Malacarne, who stated that he would take care of it. LSI conducted an investigation into the incident and the two employees involved were reprimanded for their actions. Christopher Mize, the employee responsible for bringing the note to work, was suspended for five days and was told that failure to change his behavior would result in further disciplinary action, including possible termination. Additionally, Lou De Lange, who passed the note around the workplace, was suspended for three days and demoted from his supervisory role.

After complaining about the note, Ms. Secherest was moved to four different positions throughout the company. LSI asserts that Ms. Secherest was transferred as a result of her requests and LSI's customers' needs. LSI claims that it has a standard business practice of moving its employees around the various units in the Fort Campbell facility based on customer-support requirements and customer agreements. According to LSI's Statement of Undisputed Facts (Doc. No. 21), LSI first transferred Ms. Secherest on May 12, 2005 as a result of her request to be transferred because she felt awkward staying in the division where the incident had occurred. On May 16, 2005 LSI transferred Ms. Secherest a second time because she was in a division that was across the street from where the incident took place and people were still discussing the investigation into what occurred with Ms. Secherest. Also, there was another division of the company that needed additional, temporary support and Ms. Secherest was moved in part to fill that need. Ms. Secherest does not deny the facts surrounding the first transfer, nor does she deny that the second transfer was motivated in part because people were still talking about the investigation into her report of racism. She does appear to deny that the third placement was always meant to be temporary, but she does not point to any specific facts in the record to support her denial.[2]

LSI moved Ms. Secherest again on June 14, 2005 to a position where she remained until she took an industry leave of absence on August 5, 2005, following her involvement in an auto accident. When Ms. Secherest returned from her leave of absence on August 30, 2005, her previous work location had completed

---

[2] In her response to LSI's Statement of Undisputed facts, Ms. Secherest merely states "Denied. See memorandum of Plaintiff." This response violates LR 56.01(c)(iii), which states that "each disputed fact must be supported by specific citation to the record." In her memorandum, the only evidence Ms. Secherest puts forth in support of such denial is that Ms. Secherest, in her deposition, stated that a manager told her new supervisor that if he (the supervisor) had any trouble with her to let him (the manager) know. The Court finds that this evidence does not contradict LSI's statement that Ms. Secherest was moved because her location was across the street from her previous assignment and because of the temporary staffing needs of the new location.

its work requirements. Because of this, Ms. Secherest was again moved to a new location. Ms. Secherest disputes the facts surrounding her third move.[3] Shortly thereafter, LSI claims it notified Ms. Secherest that Lou De Lange was also working in her current unit and that she would once again transfer locations so that she would not have to work with him. After receiving this information, Ms. Secherest protested the move and LSI held a meeting with Ms. Secherest in order to address her concerns. Following the meeting, LSI decided to move De Lange and allow Ms. Secherest to remain in the same location. Mr. Booker asserts that it is standard business practice for LSI to move people throughout their time at LSI and LSI has provided examples and documentation of other LSI employees being moved various times during their employment with the company.

Ms. Secherest asserts that each time she was moved, her new supervisors were told it was because she was having problems resulting from the derogatory note she found in her mailbox. In support of this claim, she offers only unsupported hearsay that another employee allegedly told her that one of her supervisors was telling people that she "had a problem with him" and that she had "got him in trouble and got him demoted." (Pl. Dep. at 102.)

Ms. Secherest also claims that she was badgered, harassed and humiliated by LSI in an effort to make her leave the company and was given false disciplinary write-ups, which forced her to go home without pay. Ms. Secherest asserts that these actions were retaliatory measures taken by LSI because of she complained about the derogatory note. As to Ms. Secherest's claim that she was issued "bogus" written reprimands, it is undisputed that Ms. Secherest received a written reprimand on September 9, 2005 due to a violation of LSI's time sheet policy. LSI asserts that Ms. Secherest failed to log her hours worked on August 3, 2005 and August 4, 2005. Additionally, LSI states that on January 1, 2006, Ms. Secherest was told by a supervisor to go home and change her clothing because she was out of uniform. After this incident, Ms. Secherest telephoned Reggie Booker and told him that she was going to suffer a nervous breakdown. Mr. Booker told Ms. Secherest that she should go home and that LSI would place her on medical leave of

---

[3]Again, in violation of LR 56.01(c)(iii), Ms. Secherest cites to "Plaintiff's memorandum" as proof that she disputes LSI's asserted facts. The only information given by Ms. Secherest in her memorandum is that "there is nothing in the record to indicate this was nothing more that another attempt to discourage Ms. Secherest." The Court finds that this statement is not enough to contradict LSI's facts that are actually supported by evidence in the record.

3

absence. Ms. Secherest agreed with Mr. Booker and took a leave of absence. In her deposition, Ms. Secherest admitted that she failed to log her hours on August 3 and 4, 2005 in violation of company policy and was reprimanded as a result. She also admitted, however, that she was not suspended, did not lose any pay and was not demoted in connection with this reprimand. She likewise does not dispute the facts surrounding her alleged uniform violation.

After going on medical leave, Ms. Secherest visited a Dr. Kelly who sent a letter to LSI advising the company that Ms. Secherest should be on medical leave for a period not to exceed six weeks. After six weeks, however, it appears that Ms. Secherest did not return to see Dr. Kelly nor did she return to work at LSI, although Ms. Secherest admitted in her deposition that she was capable of returning to work at that time. Ms. Secherest has been treated by Dr. Kelly, as well as another physician, for depression, and Dr. Kelly prescribed an anti-depressant medication for Ms. Secherest in order to help with a sleeping disorder. Ms. Secherest is not currently receiving any medical treatment other than pre-natal care in connection with her pregnancy with her second child. While LSI has never terminated Ms. Secherest, since taking medical leave in January of 2006, Ms. Secherest has not returned to work at LSI and LSI has not paid her any wages.[4] Ms. Secherest received unemployment benefits from April of 2006 through September of 2006.

## II.     Standard of Review

Summary Judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is an "absence of a genuine issue of material fact as to an essential element of the nonmovant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The moving party may do this by providing affidavits or other proof or by showing lack of evidence on an issue for which the non-moving party will have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-moving party must then present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

## III.    Analysis

### A.     *Prima Facie Case of Retaliation*

---

[4] LSI never terminated Ms. Secherest and Ms. Secherest is not claiming that LSI terminated her employment. It does appear, however, that Ms. Secherest has ended her employment with LSI since the events at issue occurred.

4

To prove a prima facie case of retaliation under either Title VII or the THRA, a plaintiff must show the following: (1) that the plaintiff employee engaged in a protected activity; (2) that the defendant employer knew of the of the protected activity; (3) that the defendant employer subsequently took retaliatory action against the plaintiff or that the plaintiff was subjected to severe retaliatory harassment by a supervisor; and (4) that the protected activity and the adverse action were causally connected. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 736 (6th Cir. 2006); *Miller v. City of Murfreesboro*, 122 S.W.3d 766, 775 (Tenn. Ct. App. 2003). While Ms. Secherest can show that she engaged in protected activity and the LSI was aware of her engagement in the protected activity, she has not shown that the other two requirements of a prima facie case of retaliation have been satisfied in this instance.

*1. Protected Activity and LSI's Knowledge of the Protected Activity*

The protected activity requirement of a retaliation claim has been interpreted very broadly, and the " 'exceptionally broad protections' of the participation clause extend to persons who have 'participated in any manner' in Title VII proceedings." *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1312 (6th Cir. 1989) (citing *Pettway v. Am. Cast Iron Pipe Co.*, 411 F.2d 998, 1006 (5th Cir. 1969). Because of the broad interpretation of the protected activity requirement and because the parties do not dispute that Ms. Secherest was participating in a protected activity, the Court finds that Ms. Secherest did engage in a protected activity when she reported the racially derogatory note in her mailbox. Furthermore, the Court finds that LSI did indeed know that Ms. Secherest engaged in a protected activity. Mr Booker, head of Human Resources at LSI, stated that on May 10, 2005, Ms. Secherest complained to her supervisor about the note and LSI conducted an investigation into the incident. Neither party contests the fact that LSI knew about Ms. Secherest's engagement in the protected activity and, as such, the Court finds that LSI was aware of the activity.

*2. Retaliatory Action Taken by LSI*

The third requirement for a prima facie case of retaliation is that the employer subjected the employee to severe retaliatory action. The retaliatory action need not specifically affect the plaintiff's employment. *Burlington N. & Santa Fe Ry. Co., v. White*, 126 S. Ct. 2405, 2414 (2006). In *Burlington*, the Supreme Court stated that "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the workplace." *Id.* at 2412 (citing *Ronchon v. Gonzales*,

5

438 F.3d 1211, 1213 (D.C. Cir. 2006)). The Supreme Court held that in order to prove retaliation, a plaintiff must show that "a reasonable employee would have found the challenged action materially adverse 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 2415 (quoting *Ronchon*, 438 F.3d at 1219). The Supreme Court went on to state that "reassignment of job duties is not automatically actionable" and that a trier of fact must look at the circumstances of a particular case and judge the case from the viewpoint of a reasonable person in the place of the plaintiff. *Id.* at 2417 (citing *Oncale v. Sundowner Offshore Servs., Inc.,* 532 U.S. 75, 81 (1998)). With this guidance from the Supreme Court, this Court finds that the actions taken by LSI after Secherest complained about the derogatory note do not rise to the level of adverse actions.

In *Burlington*, the plaintiff, who was a forklift operator, was transferred to a position that was widely known to be a much harder and much dirtier position after she complained that her supervisor had sexually harassed her. *Id.* at 2406. Later, after the plaintiff complained about her transfer, she was suspended for thirty-seven days without pay for insubordination. While the plaintiff was eventually given back pay for this suspension, the Supreme Court noted that the plaintiff and her family were forced to live without an income for thirty-seven days. *Id.* Because of the obviously downgraded conditions of the plaintiff's job as well as the thirty-seven day suspension, the Supreme Court found that a reasonable juror could have found that the defendant's actions against the plaintiff were materially adverse. *Id.* at 2417.

In the situation at hand, LSI's actions after Ms. Secherest complained about the derogatory note do not rise to the level of materially adverse. Ms. Secherest was transferred to different locations within LSI, but none of the transfers had a detrimental impact on the terms of her employment. Ms. Secherest received the same pay, worked the same hours and had substantially similar job duties at each location. Additionally, when Ms. Secherest did complain to her supervisors that she did not want to be transferred again, LSI moved De Lange instead and allowed Ms. Secherest to stay where she was. Looking at all of the circumstances surrounding the event, the Court finds that a reasonable person could not find these actions to be retaliatory.

As to the disciplinary write-ups, which Ms. Secherest claims are "bogus," the Court once again finds that they do not qualify as materially adverse actions. In *Burlington*, the plaintiff was suspended for thirty-seven days and she and her family were forced to live without an income during that period. *Id.* at 1217. In the case at bar, Ms. Secherest was given one write-up for failing to log her hours and one write-up for being

6

out of uniform. Ms. Secherest does not dispute the facts that led to the write-ups. Moreover, in both instances, the situations were dealt with quickly and Ms. Secherest lost no pay as a result of the disciplinary actions. She did not, like the plaintiff in *Burlington,* have to spend thirty-seven days with no income wondering whether she would be reinstated. While Ms. Secherest was asked to go home to change her clothes because she was out of uniform, this does not appear to the Court to create a situation where an employee would be dissuaded from waging or supporting a discrimination charge. In fact, Ms. Secherest called Mr. Booker after being sent home and complained to him, saying that she felt she would have a nervous breakdown, in response to which Mr. Booker told Ms. Secherest that she should take a medical leave of absence.

3. *Causal Connection between Protected Activity and Retaliatory Action*

In a retaliatory action, a plaintiff must be able to show that there is a causal connection between the protected activity and the adverse action taken by the employer. In order to show a causal connection, a plaintiff must show "a temporal connection coupled with other indicia of retaliatory conduct." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 364 (6th Cir. 2001). In this instance, Ms. Secherest can show that there is a temporal connection between her complaint about the derogatory note and LSI's actions. What Ms. Secherest cannot show, however, is that there were other indicia of retaliatory conduct on the part of LSI.

The Sixth Circuit has held that an allegedly adverse employment action that took place a year and three months after the employee engaged in protected activity was still close enough in time to satisfy the temporal requirement of the causal connection element. *Harrison v. Metro Gov't of Nashville & Davidson County, Tenn.*, 80 F.3d 1107, 1119 (6th Cir. 1996). Because the Sixth Circuit has found that such a lengthy time lapse satisfies the temporal requirement, the transfers and the reprimands at issue in this case, which took place within a year of Ms. Secherest's complaint about the note, clearly satisfy the temporal requirement. As stated in *Little*, however, there must be other evidence of retaliatory conduct, along with the temporal connection, in order to satisfy the causal connection requirement of a prima facie case of retaliation. *Little*, 265 F.3d at 364. In *Little*, Little's co-workers testified that they were asked to make false claims of theft and harassment against Little or they would lose their jobs. *Id.* at 365. Little was also disciplined for being out of uniform when his co-workers, who were also technically in violation of the uniform requirement, were not punished. *Id.* In *Harrison*, the Sixth Circuit found that three of Harrison's co-workers feared retaliation because they had testified at Mr. Harrison's EEOC hearing and that one of Mr. Harrison's supervisors made

7

repeated comments about wanting to run people out of his department. *Harrison*, 80 F.3d at 1119. This behavior, coupled with the temporal proximity of Harrison's complaint to the EEOC and his suspension from his job satisfied the causal connection. *Id.*

In Ms. Secherest's case, while the temporal requirement is satisfied, there are very few indicia of discrimination that would satisfy the second requirement of the causal connection element. Ms. Secherest was, like in *Harrison*, asked to go home and change clothes because she was out of uniform, but, unlike in *Harrison*, there is no evidence presented to the Court that any of Ms. Secherest's co-workers were also out of uniform and not told to go home. Additionally, while Ms. Secherest claimed in her deposition that there were questionable comments made by a manager to a supervisor, there is no evidence outside of Ms. Secherest's own deposition testimony—in the form of inadmissible hearsay—to support Ms. Secherest's statements. There are, however, reasons for LSI's actions that contradict any discriminatory intent on the part of the company. This being the case, this Court is not required to "accept unsupported, self-serving testimony as evidence sufficient to create a jury question." *Brooks v. Am. Broad., Inc.*, 999 F.2d 167, 172 (6th Cir. 1993).

In fact, most of the evidence submitted to the Court indicates that LSI treated Ms. Secherest favorably after she complained about the derogatory note. LSI punished both employees involved in placing the note in Ms. Secherest's mailbox; LSI moved Ms. Secherest twice at her own request; and while LSI did move her two more times based on what this Court finds were legitimate staffing needs, when Ms. Secherest asked to stay in her current location, LSI obliged and did not move her. Furthermore, when Ms. Secherest complained about having a nervous breakdown after being told to go home and change her clothes, LSI told Ms. Secherest to take medical leave. All of these factors combined lead this Court to find that there are no indicia of discrimination on the part of LSI sufficient to establish the causal connection element of a prima facie case of retaliation.

### B. *Burden-Shifting Analysis*

In the alternative, the Court finds that, assuming that LSI did take materially adverse action against Ms. Secherest, Ms. Secherest presents no credible evidence that the legitimate reasons given by LSI were pretextual. When a plaintiff presents a prima facie case for retaliation, the employer must then give a legitimate, non-discriminatory reason for the actions taken. Once this reason is given, the burden shifts to the plaintiff to show that the reason was a pretext and that the actions taken were discriminatory in nature.

8

*McDonnell Douglas Corp., v. Green*, 411 U.S. 792 (1973). In the present situation, LSI has presented legitimate, non-discriminatory reasons for each of Ms. Secherest's transfers and Ms. Secherest has failed to offer evidence that LSI's stated reasons were pretext for a discriminatory intent, thus leaving no question of fact as to the issue of pretext.

                *1.     LSI's Legitimate, Non-Discriminatory Reasons*

LSI has explained in its brief why Ms. Secherest was transferred within the company and why she received the two written reprimands from her supervisors. To review briefly: LSI first transferred Ms. Secherest at her request after she found the note in her mailbox. The second transfer was a result of Ms. Secherest being across the street from her previous location where people were still talking about the investigation. That position was temporary in nature, and LSI then moved her to an area that was also in need of temporary help.

While Ms. Secherest was at her third location, she was involved in an automobile accident, which required her to take a medical leave of absence. When Ms. Secherest returned from this leave, the location where she was previously working no longer needed the extra temporary work. As a result, LSI once again moved Ms. Secherest to a new location within the company. Once at her fourth placement, LSI discovered that Lou De Lange, the supervisor who was involved in placing the derogatory note in Ms. Secherest's mailbox, was working at the same location. Because of this, LSI sought once again to move Ms. Secherest. Ms. Secherest, however, complained that she did not want to move again and LSI, after meeting with Ms. Secherest, decided to leave her in her current location and move De Lange to another position.

Additionally, LSI claims that it is standard practice to transfer employees to different locations within the company and that it did not transfer Ms. Secherest in an attempt to discriminate against her. To support this assertion, LSI submitted evidence, in the form of transfer sheets, that shows other LSI employees who have been transferred multiple times within the company within the same time frame as Ms. Secherest. Some of these employees were transferred more frequently than Ms. Secherest.

LSI has also given legitimate, non-discriminatory reasons for both reprimands that Secherest received from her supervisors. The first reprimand that Ms. Secherest received was in response to her failure to log her hours on the two days prior to her going on medical leave. LSI states, and Ms. Secherest agrees, that

9

she failed to log her hours for the days of August third and fourth of 2005.[5]  The second reprimand occurred when a supervisor told Ms. Secherest to go home and change her clothes because she was out of uniform. Secherest does not deny these facts.

The Court finds that each of the reasons given by LSI for its actions to be legitimate, non-discriminatory, business reasons.  Furthermore, Ms. Secherest, while ostensibly contesting some of the facts, does not provide the Court with any substantially contradictory evidence.

### 2. Evidence of Pretext

Following the McDonald Douglas burden-shifting analysis, the burden now shifts to Ms. Secherest to present evidence which raises a question as to the legitimacy of LSI's given reasons.  It is now up to Ms. Secherest to present some evidence that LSI's given reasons were a pretext for a discriminatory intent.  In order to show that a defendant's given reasons are a pretext for its real rationale, a plaintiff must submit evidence that the given reason (1) had no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged behavior.  *Wexler v. Whites Fine Furniture, Inc.*, 317 F.3d 564, 594 (6th Cir. 2003).  While Ms. Secherest does state in her brief that evidence of pretext regarding LSI's actions is "readily apparent," she does not identify the evidence that would support this contention.  Instead, Ms. Secherest argues in her Response is that the evidence in support of LSI's given reasons consist of testimony as to intent and motive which, she claims, the Court should not consider in a motion for summary judgment.  The Court disagrees with this argument.  Under the burden-shifting analysis, a defendant is required to give the Court a legitimate, non-discriminatory reason for its actions.  In the case at hand, LSI has done just that by explaining why it transferred and reprimanded Ms. Secherest.  Because LSI is required by the burden-shifting analysis to give a legitimate, business reason for its actions, Ms. Secherest's intent-and-motive argument fails in this situation.

The Court finds that LSI's given reasons are legitimate, non-discriminatory business reasons and that

---

[5]Although Ms. Secherest does not clearly admit or deny failing to log her hours the two days in question, she asserts in her deposition that she was told by a supervisor that her time sheet would be taken care of while she was on leave.  Viewing these facts in a light most favorable to Ms. Secherest, the Court finds that LSI had a legitimate reason for giving Ms. Secherest this reprimand.  Even if Ms. Secherest was told her time sheet would be taken care of while she was on leave, the two days in question were before she left on leave, so the guarantee that her time sheet would be taken care of would not necessarily have applied to the days in question.

10

Case 3:06-cv-00336   Document 28   Filed 04/16/07   Page 10 of 11 PageID #: 255

Ms. Secherest has offered no credible or substantial evidence of pretext. Consequently, even if LSI's actions as to Ms. Secherest were materially adverse, there was no discriminatory intent behind the actions.

**IV.     Conclusion**

For the reasons stated above, the Court finds that Ms. Secherest has not presented a prima facie case of retaliation on the part of LSI under Title VII or the THRA. In the alternative, even if Ms. Secherest were able to support a prima facie case for retaliation, LSI has presented legitimate, non-discriminatory, business reasons for its actions, which Ms. Secherest cannot show are pretext. For these reasons, Defendant LSI's Motion for Summary Judgment on both Title VII and THRA grounds will be granted.

An appropriate order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge